UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK L. MORRIS,<br><br>    Plaintiff,<br><br>  v.<br><br>JOE McGRATH, warden; et al.,<br><br>    Defendants.<br>_____/ | No. C 04-3142 SI (pr)<br><br>**ORDER OF DISMISSAL** |

### INTRODUCTION

Jack L. Morris, a prisoner at Pelican Bay State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. Defendants have moved to dismiss, arguing that Morris failed to exhaust administrative remedies before filing the action. Morris has opposed the motion. The court will grant the motion and dismiss the action on the basis of non-exhaustion of administrative remedies.

### BACKGROUND

This action concerns defendants' responses to Morris' medical needs with regard to his claw-toe condition -- specifically, their responses to his complaints about his need for special shoes and about the bleeding, cuts and pain he experienced from wearing regular shoes.

Defendants have moved to dismiss the action, arguing that Morris did not exhaust his administrative remedies before filing this action. Morris filed this action before he received a final response to his appeal to the director's level. Morris responds that his claims

nonetheless should be considered exhausted because CDC officials did not respond to his inmate appeal within the time limits provided in the applicable regulation.

## DISCUSSION

A.   The Procedural Mechanism For Raising Exhaustion Problems

A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In Wyatt, the Ninth Circuit explained that the proper way to establish nonexhaustion is by a unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Id. This is so because the "failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement." Id. The summary judgment procedure is a decision on the merits while a dismissal for failure to exhaust is not on the merits. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). Ritza explained that "[t]he distinction between summary judgment and dismissal for matters in abatement bears on the district court's authority to resolve factual disputes and thus affects the standard of review to be applied by this court." Id. at 369. The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). See id. Wyatt and Ritza allow this court to resolve factual disputes, but only with regard to the exhaustion issue.

B.   Exhaustion Regulations

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and parolees the right to

2

appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. See id. § 3084.5; Ngo v. Woodford, 126 S. Ct. 2378, 2383 (2006); Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).

Section 3084.6 of the California Code of Regulations puts time limits on the responses to inmate appeals. The time limits are measured from the date on which the appeal document is received by the appeal coordinator. The deadlines are 10 working days for the informal level response, 30 working days for the first level response, 20 working days for the second level response (or 30 days, if the first level is waived), and 60 working days for the third level response. Cal. Code Regs. tit. 15, § 3084.6. An exception to the deadline for the response is authorized for the: (a) unavailability of the appellant, or staff or inmate witnesses, (b) complexity of the decision, action or policy, or (c) there is a necessary involvement of other agencies or jurisdictions. Id. § 3084.6(b)(5). "Except for the third formal level, if an exceptional delay prevents completion of the review within specified time limits, the appellant shall be informed in writing of the reasons for the delay and the estimated completion date." Id. § 3084.6(b)(6).

C.   Morris' Inmate Appeal

This action was filed on August 3, 2004. Morris filed one relevant inmate appeal before he filed this action. His inmate appeal was first submitted on January 15, 2004 and finally denied on October 19, 2004.

Morris filed his original grievance on January 15, 2004. The informal level and first formal level were marked "bypass." At the second level, the inmate appeal was assigned to a reviewer on January 21, 2004, was completed on January 28, 2004, and was returned to the

3

inmate on March 19, 2004. The director's level (i.e., the third and final level) inmate appeal was submitted by Morris on March 24, 2004 and ultimately was denied on October 19, 2004. See Plaintiff's Opposition, Exh. B (Docket # 46.) Before Morris' director's level appeal was denied, there was correspondence between the director's level reviewer and the prison and prisoner. The correspondence affects the court's resolution of the pending motion.

Morris' director's level appeal dated March 24, 2004 described his problem and his numerous efforts to obtain services. Morris requested that he be provided with "medical shoes," a "chrono" (i.e., memorandum granting permission) to obtain new shoes as needed, and compensatory and punitive damages. Id. at 11.

On May 15, 2004, inmate appeals chief N. Grannis (the director's level reviewer) sent Morris' appeal back to him with a letter that said: "Your appeal is incomplete. You must include supporting documentation. Your appeal is missing the CDC 128-C1, Reception Center Medical Chrono (11/17/03)." Exh. B, p. 12.

On May 24, 2004, Morris wrote back to Grannis stating that Grannis had "either mistaken me with another [inmate] appeal or your [sic] in possession of information I have no knowledge of" because Morris hadn't been in a reception center for 16 or 17 years and there was no such chrono. Morris also wrote that the deadline to respond to his inmate appeal was in June 2004. Exh. B, pp. 13-14.

On July 12, 2004, reviewer Grannis wrote to the appeals coordinator at Pelican Bay and requested a copy of the "chrono dated 1/7/03 regarding the white shoes," which Morris allegedly had been unable to obtain. Exh. B, p. 18. This was in reference to the second level decision that stated that Morris "had a chrono for state-issued white leather tennis shoes, which was issued on January 17, 2003," and received appropriate shoes. See Exh. B, p. 9.

On July 19, 2004, a medical appeals analyst from Pelican Bay wrote back to Grannis:

> In response to your inquiry regarding the above noted inmate (see attached correspondence), I've attached the following:
>
> > PBSP-UM01 REV 7/02 - Approval for othodics [sic] consult – signed and dated 4/5/04.

4

>Our Specialty Clinic scheduled the Orthodics person (M. Billington) to see patient on 5/26/04, which was completed.
>
>On 6/4/04 a chrono was initiated by Dr. Allen, which was signed by HCM - Dr. Winslow (see copy attached). The patient can utilize that chrono to order from state-approved vendor.

Exh. B, p. 15.

On October 19, 2004, the director's level appeal decision was issued. The decision was signed by reviewer Grannis and denied the appeal. Exh. B, pp. 19-20. The decision stated that Morris' argument was that he had not received adequate medical treatment and that his medical condition of claw-toe required that he be provided with soft-soled shoes. The director's level decision noted that at the second level, the reviewer had found that Morris was provided with state-issued white leather athletic shoes on January 17, 2003, that the authorization for those shoes expired on January 17, 2004, that Morris was examined on December 10, 2003 and referred to a podiatrist who examined him on January 26, 2004, that the podiatrist referred him to an orthopedist or orthotic specialist, and that the request was submitted to the medical authorization committee. It was noted in the "findings" section of the director's level decision that the medical authorization committee had approved Morris for the recommended orthotics consultation and the consultation was scheduled for October 2004. Exh. B, p. 19.

D.  Analysis

The Ninth Circuit has not ruled whether the failure of prison officials to respond to an inmate appeal within the time limits in the system means that the prisoner has exhausted his administrative remedies. Several other circuit have considered the question, and have found that administrative remedies were exhausted when prison officials failed to rule on the inmate's appeal within the time limits in the system. See, e.g., Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002). The prevailing judicial concern is that potential prison official defendants should not be able to avoid being sued by

simply not responding to an inmate appeal. See id. ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") Morris' case is not that kind of case. Morris' appeal was not ignored at the director's level.

First, Morris technically did receive a response from the director's level reviewer within the 60-day time limit in that his appeal was returned to him on May 15 with a letter that stated the inmate appeal was incomplete and required further documentation.

Second, Morris' response to the rejection for incompleteness showed that he expected further consideration of his appeal. Morris's response to the rejection for incompleteness was to explain that the requested documentation did not exist. The director's level reviewer obtained materials from the Pelican Bay medical appeals coordinator and did issue a formal decision thereafter. The complete director's level appeal review may have taken longer than the 60-day time period contemplated in the regulation but that was because there was an effort to investigate the case and documents were needed from the prison or prisoner to do that. Morris knew that fact and knew that his inmate appeal had not disappeared. Indeed, he had written back to reviewer Grannis just six weeks before filing this action, explaining that Grannis had his facts wrong and that the requested chrono did not exist. Documents later were obtained from the medical appeals coordinator, and those documents were included in the director's level review.

Finally, when one reads the director's level decision, it appears that this was one of those infrequent cases where the inmate appeal process actually did provide some help to the prisoner. Morris' claim about inadequate care for his claw-toe condition was reviewed, his many requests for an orthotics consultation were finally granted, and the medical authorization committee approved the orthotics consultation. After the inmate appeal concluded, Morris apparently finally received his desired shoes in the first quarter of 2005.

The court finds that Morris had not exhausted his administrative remedies before filing this action. The action was filed prematurely and must be dismissed under § 1997e(a).

6

The fact that Morris completed the administrative appeal process <u>after</u> he filed this action does not save him. The exhaustion statute requires presuit exhaustion, and that did not occur here. See <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1050-51 (9th Cir. 2006).

## CONCLUSION

Defendants' motion to dismiss is GRANTED for plaintiff's failure to exhaust administrative remedies before filing this action. (Docket # 43.) This action is dismissed without prejudice to plaintiff filing a new action in which he asserts claims as to which administrative remedies have been exhausted. The clerk shall close the file.

IT IS SO ORDERED.

Dated: July 31, 2006

_____
SUSAN ILLSTON
United States District Judge